# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CSX INSURANCE COMPANY, et al., Plaintiff, | ) ) ) No. 07 CV 2738 |
| v. | ) Judge Blanche M. Manning ) ) |
| PACIFIC RAIL SERVICES, LLC, Defendant. | ) ) ) |
| and | |
| PACIFIC RAIL SERVICES, LLC, Plaintiff, | ) ) ) ) No. 07 CV 4185 |
| v. | ) Judge Blanche M. Manning ) ) |
| CSX INTERMODAL, INC., Defendant. | ) ) ) |

## MEMORANDUM AND ORDER

Warren Kubicek operated a crane that lifted cargo containers onto railroad flatcars. In September 2001 the crane malfunctioned, crushing Kubicek and causing significant property damage at the railyard where he worked in Bedford Park, Illinois. Since Kubicek's death, the company that owned the crane and railyard, CSX Intermodal, and the company that operated the crane and employed Kubicek, Pacific Rail Services, have engaged in protracted litigation over who is responsible for the accident. A state court previously settled some of the disputed issues, and additional disputed issues have been presented to this court.

Currently before the court are three motions for judgment on the pleadings. In case no. 07 CV 2738, Pacific Rail has moved for judgment in its favor on Counts I and II of its complaint against CSX. In case no. 07 CV 4185, Pacific Rail has moved for judgment in its favor on Count I of CSX's complaint against Pacific Rail, while CSX has moved for judgment in its favor on

that same count. For the reasons that follow, Pacific Rail's motions are denied, while CSX's motion is granted.

## BACKGROUND

The following facts are taken from the parties' pleadings and are undisputed. CSX owns and operates the Bedford Park railyard where Kubicek worked. The railyard is known as an intermodal yard, meaning that workers operate large cranes to load cargo containers onto railroad flatcars. CSX entered into a Lift Services Agreement with Pacific Rail, under which CSX agreed to pay Pacific Rail to operate the crane and other equipment used to load and unload the cargo containers. The parties were operating under the Lift Services Agreement at the time of the incident that led to Kubicek's death.

The dispute between the parties centers primarily on section 9 of the Lift Services Agreement, specifically § 9.1 on insurance and § 9.4 on indemnification. Section 9.1 required Pacific Rail to obtain automobile and commercial general liability insurance naming CSX as an additional insured, as well as workers' compensation and employers' liability insurance. Section 9.1.2 detailed the specific commercial general liability insurance that Pacific Rail was required to purchase:

> 9.1.2 commercial general liability insurance, naming CSXI as an additional insured, covering bodily injury and property damage, arising out of exposures not covered by other insurance coverages, with a coverage limit of not less than $5,000,000 per occurrence and containing contractual liability coverage or an appropriate endorsement which will cover the obligations assumed by Contractor [Pacific Rail] under this Agreement;

Lift Services Agreement at 9 (attached as exhibit 1 to Amended Complaint in 07 CV 2738 (R.16) and Complaint in 07 CV 4185 (R.1)).

Under § 9.4.1, Pacific Rail was obligated to indemnify CSX for, among other things, all liability, loss, damage, and attorneys' fees incurred as a result of the death of anyone, including Pacific Rail employees, as well as the loss, destruction of, or damage to property. Section 9.4.2 limits the extent of Pacific Rail's obligation to indemnify CSX as follows:

> 9.4.2 Contractor's [Pacific Rail's] indemnification shall extend, without limitation, to the defense of claims and actions alleging that an indemnified party's negligence, gross negligence, or willful misconduct was or might have been the sole or contributing cause of the subject indemnity event, but shall not extend to any judgement, award or settlement to the extent (on a comparative basis) it has been finally determined judicially or through arbitration, or agreed by the indemnified party, that the indemnified party's negligence, gross negligence or other tortious conduct was a cause of the indemnity event (each an "indemnity exception"). CSXI shall reimburse Contractor for the reasonable incremental costs incurred by Contractor in defending an indemnified party with respect to an indemnity exception.

Lift Services Agreement at 12.

Following Kubicek's death, his estate sued CSX and others in state court for wrongful death. The complaint alleged that CSX had been negligent for failing to properly repair, maintain, and detect deficiencies in the repair and maintenance of the crane that malfunctioned. CSX tendered the defense of Kubicek's claim both to Pacific Rail under § 9.4.2 of the Lift Services Agreement, as well as to Pacific Rail's commercial general liability insurance carrier. Pacific Rail accepted the tender and spent $834,128.62 defending CSX.

In the meantime, CSX filed a third-party complaint against Pacific Rail for contribution. The third-party complaint alleged that Pacific Rail had been negligent for failing to properly train and supervise its employees and for failing to have them inspect equipment before using it. But CSX's third-party claim against Pacific Rail was short-lived. Pacific Rail filed a motion for summary judgment. CSX stated that it had no objection to the motion, and the state court granted it.

Page 3

CSX and the other defendants ultimately settled with the Kubicek estate. CSX's share of the settlement payment totaled $2,000,000. However, the commercial general liability insurance carrier refused to reimburse CSX based upon a term in the policy that Pacific Rail had purchased that excluded coverage for a liability that arose from the fault or negligence of an additional insured. Pacific Rail also refused to reimburse CSX because under § 9.4.2 of the Lift Services Agreement, Pacific Rail was not required to provide indemnity to the extent "it has been finally determined judicially or through arbitration, or agreed by the indemnified party, that the indemnified party's negligence, gross negligence or other tortious conduct was a cause of the indemnity event." Lift Services Agreement at 12. Moreover, Pacific Rail asked CSX to reimburse the $834,128.62 Pacific Rail spent on defense costs, which CSX has refused to do.

Following the resolution of the parties' claims in state court, they filed suit in federal court. In case 07 CV 2738, CSX sued Pacific Rail alleging that Pacific Rail breached the Lift Services Agreement by: (1) obtaining a commercial general liability insurance policy that excluded coverage for CSX's negligence and that was issued by a carrier that was not authorized to do business in Illinois (Count I); and (2) failing to indemnify CSX (Count II).

In case 07 CV 4185, Pacific Rail sued CSX: (1) seeking a declaratory judgment that (i) CSX's negligence was responsible for the crane's collapse and Kubicek's death, (ii) CSX's settlement constitutes an admission under the doctrine of collateral estoppel that its negligence was responsible for the crane's collapse and Kubicek's death, (iii) CSX breached the Lift Services Agreement by failing to properly maintain the crane that collapsed, (iv) CSX must reimburse Pacific Rail the costs of defending CSX in state court, and (v) CSX must reimburse Pacific Rail for fees and costs incurred in the instant actions (Count I); (2) CSX breached the

indemnity provision of the Lift Services Agreement by refusing to reimburse Pacific Rail for the costs of defending CSX in state court (Count II); and (3) CSX breached the Lift Services Agreement by failing to maintain the crane that collapsed (Count III).

The parties now seek judgment in their favor on their own complaints under Federal Rule ov Civil Procedure 12(c). In addition, Pacific Rail seeks judgment under Rule 12(c) on Count I of CSX's complaint or, in the alternative, summary judgment on that count.

## ANALYSIS

The standard of review for a motion for judgment on the pleadings is the same as that for a motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Pisciotta v. Old Nat'l Bankcorp*, 499 F.3d 629, 633 (7th Cir. 2007). Under that standard, the complaint is sufficient if it contains a short, plain statement of the claim showing that the plaintiff is entitled to relief. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). No detailed factual allegations are required, but the defendant is entitled to fair notice of the claim, the ground upon which it rests, and the factual allegations must be sufficient to raise a right to relief above the speculative level. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A motion for judgment on the pleadings may only be granted if no material issues of fact remain to be resolved between the parties. *See National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1986).

In resolving a motion for judgment on the pleadings, a district court may look to only the pleadings, documents incorporated by reference to the pleadings, and matters of which the court may take judicial notice. *See Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 500 F. Supp. 2d 864, 867 (N.D. Ill. 2007). A court may "take judicial notice of 'proceedings in other courts, both

within and outside of the federal judicial system, if the proceedings have a direct relation to the matters at issue.' This is true even though those proceedings were not made part of the record before the district court." *United States v. Hope*, 906 F.2d 254, 260 n.1 (7th Cir. 1990) (citations omitted). In the instant case, both parties agree that the court may take judicial notice of the state court proceedings between them.

**I.    CSX's Motion for Judgment on the Pleadings (07 CV 2738)**

The court turns first to CSX's motion for judgment in its favor on (1) its claim that Pacific Rail breached the Lift Services Agreement by failing to obtain adequate insurance coverage, and (2) Pacific Rail's affirmative defense of detrimental reliance. The court will address each basis in turn.

**A.    Insurance Coverage (Count I)**

Under § 9.1.2 of the Lift Services Agreement, Pacific Rail agreed to obtain

> commercial general liability insurance, naming CSXI as an additional insured, covering bodily injury and property damage, arising out of exposures not covered by other insurance coverages, with a coverage limit of not less than $5,000,000 per occurrence and containing contractual liability coverage or an appropriate endorsement which will cover the obligations assumed by Contractor [Pacific Rail] under this Agreement.

Lift Services Agreement at 9. CSX contends that Pacific Rail violated § 9.1.2 by purchasing insurance that excluded coverage for CSX's negligence, as opposed to insurance that covered *any* liability "not covered by other insurance coverages." *Id.*

Pacific Rail responds that its obligation under § 9.1.2 was limited to purchasing insurance that provided coverage to CSX, but only for liability imputed to it by virtue of the conduct of the insured, Pacific Rail, not the conduct of the additional insured, CSX. Pacific Rail contends that it met that obligation by purchasing a policy that named CSX as an additional insured, though

Page 6

coverage was limited to liability that arose from the conduct of the insured, Pacific Rail. Alternatively, Pacific Rail contends that the meaning of § 9.1.2 is ambiguous and therefore not ripe for judgment on the pleadings.

The court notes first that the Lift Services Agreement contains a choice of law provision that calls for the application of the laws of Florida. Therefore that is the law the court will apply. The court notes that Pacific Rail has cited *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007), for the proposition that Illinois law should also be applied to the extent it does not conflict with Florida law. But *Townsend* involved tort claims, not claims arising from a contract that included a choice of law provision. Accordingly, the court will apply only Florida law. The court will also interpret the parties' intent based solely upon the unambiguous terms they used in the contract, and will not resort to parol evidence unless the court first determines that the contract's terms are ambiguous. *See Gowni v. Makar*, 940 So. 2d 1226, 1230 (Fla. App. Ct. 2006) (consideration of parol evidence is inappropriate if contract is unambiguous).

Pacific Rail's interpretation—that it was to purchase an insurance policy that provided less coverage to the additional insured (CSX) than to the insured (itself)—is unsupported by the language of the Lift Services Agreement. The contract unambiguously required Pacific Rail to obtain "commercial general liability insurance, naming CSXI as an additional insured, covering bodily injury and property damage, arising out of exposures not covered by other insurance coverages." Lift Services Agreement at 9. That language cannot be interpreted as placing a limit or otherwise modifying the coverage Pacific Rail was to obtain for CSX as an additional insured. The language also stands in sharp contrast to the language the parties used in the indemnification provision of the Lift Services Agreement, where the parties explicitly excluded

indemnification of CSX's negligence by employing the following provision: "Contractor's [Pacific Rail's] indemnification . . . shall not extend to any judgment, award or settlement to the extent . . . that the indemnified party's negligence, gross negligence or other tortious conduct was a cause of the indemnity event." *Id.* at 12.

Despite the contrast in language between the insurance provision and the indemnification provision, Pacific Rail contends that the language used in one section must be read in conjunction with the language used in the other. Read together, Pacific Rail reasons that the insurance provision did not require it to *insure* against CSX's negligence because it was not required to *indemnify* CSX's negligence. In support it cites *University Plaza Shopping Center, Inc. v. Stewart,* 272 So. 2d 507 (Fla. 1973), which Pacific Rail contends employs similar reasoning. That case involved an insurance policy purchased by University Plaza that provided coverage only for its own *contractual* liability. *Id.* at 512. After tenant Stewart sued over a ruptured gas line, the court concluded that University Plaza's insurer was not required to provide coverage because, under the contract between University Plaza and Stewart, University Plaza was not required to indemnify Stewart. *Id.* In other words, because there was no contractual liability between the parties, the policy covering only contractual liabilities was not implicated.

Pacific Rail's reliance upon *University Plaza* is unavailing because the case is inapposite for two reasons. First, it concerned only the coverage provided by a policy for contractual liability, not the requirement to purchase a broader commercial general liability insurance policy that also covered tortious conduct. Second, Stewart was not an additional insured on the policy that University Plaza purchased and so the court did not face the issue of whether an additional insured is due the same scope of coverage afforded the party who purchased the insurance.

Later, the Florida Supreme Court stated that *University Plaza* is not instructive on what type of coverage additional insureds are due because *University Plaza* did not concern an additional insured. *See Container Corp. of Am. v. Maryland Cas. Co.*, 707 So. 2d 733, 735 (Fla. 1998). In doing so, it expressly rejected the argument made by Pacific Rail that the indemnification provision has any bearing on the contractual requirement to purchase insurance. *Id.* ("we cannot agree with the conclusion that the indemnity language of the contract is dispositive of the coverage issue.").

In summary, under the unambiguous terms of the Lift Services Agreement, Pacific Rail was required to obtain a policy that provided the same coverage to CSX as an additional insured that Pacific Rail obtained for itself. It is undisputed that the policy Pacific Rail obtained excluded coverage for CSX's negligence. Therefore, Pacific Rail breached its obligations under the Lift Services Agreement and CSX is entitled to judgment on the pleadings on Count I of its complaint as to liability. The court expresses no opinion about damages at this time.

### B. Detrimental Reliance (First Affirmative Defense)

In its answer to CSX's complaint, Pacific Rail alleged the affirmative defense of estoppel/detrimental reliance. Specifically, Pacific Rail contends that CSX is estopped from claiming that Pacific Rail breached its contractual obligation to procure insurance that covered CSX's negligence because Pacific Rail provided a copy of the certificate of insurance to CSX for its review and CSX never objected.

Under § 9.2 of the Lift Services Agreement, Pacific Rail was obligated to "provide CSXI with certificates of insurance (and, as requested by CSXI, copies of the insurance policies) and evidence of payment of all due premiums for such insurance." Lift Services Agreement at 10.

In its affirmative defense, Pacific Rail contends that it provided to CSX the certificate of insurance as required. Because CSX did not exercise its right under § 9.2 to withhold "reasonable prior approval" after receiving the certificate of insurance, Pacific Rail alleges that CSX is now estopped from objecting to the adequacy of the insurance or alleging breach of contract based upon any inadequacy of the insurance.

However, in § 15.3 of the Lift Services Agreement, the parties agreed to the following waiver provision: "[d]elay or failure by either party to enforce any term or condition of this Agreement shall not be deemed a waiver of enforcement or further enforcement of that or any other term or condition." Lift Services Agreement at 18. In other words, CSX's failure to object at the time to the adequacy of the insurance that Pacific Rail obtained does not preclude CSX's claim now that Pacific Rail failed to obtain adequate insurance.

Pacific Rail argues that by failing to disapprove of the insurance policy that it obtained, CSX had not "fail[ed] to enforce a particular provision" of the Lift Services Agreement, but rather "declined to advise Pacific Rail that it had any reason to disapprove of the insurance coverage provided by Pacific Rail." As a result, Pacific Rail contends that its affirmative defense is not barred by the waiver provision in § 15.3, which deals only with failures to enforce provisions of the contract.

The court cannot discern the difference that Pacific Rail purports to have identified. CSX's right to disapprove of the certificate of insurance is provided by § 9.2 of the Lift Services Agreement. Therefore, CSX's decision not to exercise that right is necessarily a failure "to enforce any term of condition" of the Lift Services Agreement which, under § 15.3, "shall not be deemed a waiver of enforcement or further enforcement of that or any other term or condition."

As a consequence, Pacific Rail cannot show estoppel, and CSX is entitled to judgment on the pleadings on Pacific Rail's first affirmative defense.

## II. Pacific Rail's Cross-Motion for Judgment on the Pleadings (07 CV 2738)

The court now turns to Pacific Rail's cross-motion for judgment on Count I of CSX's complaint. As a threshold matter the court notes that Pacific Rail never properly filed this motion—it raised the issue in the response brief it filed in opposition to CSX's motion for judgment on the pleadings. Furthermore, Pacific Rail's arguments in favor of judgment are unavailing. Pacific Rail brought this motion in response to CSX's motion for judgment on the pleadings on this same count. As discussed above, the court has already determined that CSX is entitled to judgment in its favor on this count because Pacific Rail breached its contractual obligation to purchase insurance covering CSX's negligence. Accordingly, Pacific Rail is not entitled to a judgment that it fulfilled its obligation.

## III. Pacific Rail's Motion for Judgment on the Pleadings (07 CR 4185)

Finally, the court addresses Pacific Rail's motion for judgment on the pleadings on Counts I and II of its complaint against CSX. In Count I, Pacific Rail requested a declaratory judgment that, among other things, CSX is estopped from denying that its negligence led to the crane's collapse and Kubicek's death and that it must reimburse Pacific Rail for defending CSX in state court. In Count II, Pacific Rail asserted that CSX breached the Lift Services Agreement by failing to reimburse Pacific Rail for defending CSX in state court.

### A. Declaratory Judgment (Count I)

At the outset, the court notes that Pacific Rail's request in Count I for a declaratory judgment that CSX breached its contractual obligation to reimburse Pacific Rail for defending

CSX is wholly duplicative of its breach of contract allegations in Count II. Because it is duplicative of Count II and therefore not the proper subject of a request for a declaratory judgment, *see F.D.I.C. v. Gravee*, 966 F. Supp. 622, 633 (N.D. Ill. 1997) (dismissing claim for declaratory judgment that was duplicative of claim for breach of contract), Pacific Rail is not entitled to judgment on that portion of Count I.

The court now turns to Pacific Rail's request for a declaratory judgment that CSX is estopped from denying its own negligence in the mishap that led to Kubicek's death. Pacific Rail is interested in obtaining such a judgment because, under the Lift Services Agreement, in the event that it has been "finally determined judicially or through arbitration, or agreed by the indemnified party" that CSX's negligence was a cause of the mishap, Pacific Rail is entitled to be reimbursed its costs and fees spent defending CSX in state court.

Pacific Rail contends that the reason CSX is estopped from denying its own negligence is because CSX settled the claim brought against it in state court by Kubicek's estate. According to Pacific Rail, CSX's settlement with the Kubicek's estate constitutes a finding of negligence, even though CSX denied any liability in the settlement agreement. (The settlement agreement is not attached to Pacific Rail's complaint, but the complaint references it and the court may therefore take it into account. *See Black & Decker*, 500 F. Supp. 2d at 867 (in deciding a Rule 12(c) motion, the court may take into account not only the pleadings but also documents incorporated by reference)).

In support of the argument that CSX has admitted its own negligence, Pacific Rail cites Illinois cases concluding that where (i) a complaint claims that a defendant engaged in negligent conduct, and (ii) the defendant makes a substantial payment to settle that claim, the settlement is

considered an admission of liability. For instance, in *Hahn v. Norfolk & Western Ry. Co.*, 608 N.E.2d 683, 688 (Ill. App. Ct. 1993), an Illinois court held that:

> Even though no judgment of fault was entered against N&W, N&W did settle with plaintiff under a complaint charging fault thereby permitting the inference it settled to avoid such a finding of fault. Consequently, N&W cannot bring a claim for indemnity against Clark under such circumstances.

Pacific Rail's argument flies in the face of the long-held principle that an offer of settlement is not, by itself, an admission of liability. *See* Fed. R. Evid. 408(a). Moreover, the line of cases upon which Pacific Rail relies concern *implied* indemnity, an offshoot of the principle of restitution which arises only in the context of products liability claims. *See Hahn*, 608 N.E.2d at 687. Accordingly, the line of cases that includes *Hahn* is inapplicable to the *contractual* indemnification provision within the Lift Services Agreement. And in any event the Lift Services Agreement includes a choice of law provision that calls for the application of Florida, not Illinois, law.

Alternatively Pacific Rail argues that even if Florida law applies, CSX cannot seek indemnification of its $2 million settlement with the Kubicek estate because Florida law disfavors attempts to indemnify a party against its own negligence. In support it cites *University Plaza*, 272 So. 2d at 511-12, in which the Florida Supreme Court held that such indemnification provisions are enforced only if they contain clear and unequivocal terms. Pacific Rail contends the indemnification provision of the Lift Services Agreement does not clearly and unequivocally require it to indemnify any judgment or settlement of a claim that arose as a result of CSX's negligence.

Pacific Rail's argument is a red herring. Pacific Rail's complaint focuses on *its* right to be reimbursed for its defense costs, not on whether CSX is entitled to indemnification of the $2

million settlement. On the issue of defense costs, the Lift Services Agreement is explicit: Pacific Rail must indemnify "the defense of claims and actions alleging that [CSX's] negligence, gross negligence or willful misconduct was or might have been the sole or contributing cause of the subject indemnity event," but may seek reimbursement "with respect to an indemnity exception," which is defined as a judicial determination that CSX was negligent, or an admission of negligence. Lift Services Agreement at 12. Pacific Rail has not shown that CSX's settlement is either a judicial determination of negligence or an admission and therefore has not shown that it is entitled to judgment on the pleadings on this issue.

Finally, Pacific Rail argues that it is entitled to a declaratory judgment that the state court proceedings brought by the Kubicek estate established conclusively that the mishap was not the result of its negligence. However, Pacific Rail's complaint contains no request for a declaratory judgment on the issue of its own negligence.

Accordingly, Pacific Rail is not entitled to judgment on the pleadings on Count I of its complaint.

### B. Breach of Contract (Count II)

Pacific Rail also requests judgment on the pleadings on Count II of its complaint, in which it alleges that CSX breached the Lift Services Agreement by refusing to reimburse Pacific Rail for defending CSX in state court. Pacific Rail contends that it is entitled to reimbursement under the indemnification provision of the Lift Services Agreement, which required Pacific Rail to pay CSX's defense costs, but required CSX to reimburse those costs upon either a judicial determination or an admission by CSX that its negligence was a cause of Kubicek's death.

As discussed above, Pacific Rail has not shown that CSX's settlement of the Kubicek was either a judicial determination or an admission by CSX that it was negligent. In the absence of a judicial determination or admission, Pacific Rail has not identified any contractual basis for reimbursement, and therefore is not entitled to judgment on the pleadings on Count II.

## CONCLUSION

For the reasons stated, the court rules as follows:

- in case no. 07 CV 2738, CSX's motion for judgment on the pleadings [61-1] is granted, while Pacific Rail's cross-motion is denied;

- in case no. 07 CV 4185, Pacific Rail's motion for judgment on the pleadings [41-1] is denied.

The court also notes that cases 07 CV 2738 and 07 CV 4185 are not consolidated, and therefore the parties' practice of cross-filing all documents in both cases has unnecessarily cluttered the dockets causing undue confusion. To ease future confusion, in case 07 CV 2738 the clerk is directed to terminate motion 63 and strike documents 64, 65 and 67; in case 07 CV 4185 the clerk is directed to terminate motion 33 and to strike documents 34, 36, 39 and 48. The parties are advised in the future to file documents only in the pertinent case.

The parties shall report for a status hearing in each case on Thursday, September 11, 2008, at 11:00 am. By 5:00 pm on Tuesday, September 9, 2008, the parties shall each file a position paper—one in case 07 CV 2738 and a separate one in case 07 CV 4185—advising the court of what claims remain in light of the rulings on the motions for judgment on the pleadings. If the parties prefer, they can file joint position papers—one in 07 CV 2738 and a separate one in 07 CV 4185.

ENTER:

DATE: August 20, 2008

Blanche M. Manning
United States District Judge